May it please the Court, I am attorney for Anjan Kapoor, counsel for the petitioner, Mr. Tabarak Tofu. This is a case in which the petitioner came here fleeing political persecution after suffering from death threats to his life. Mr. Kapoor, I'm going to ask you to pull the mic a little closer to you. Leaving his wife and children behind in 2010, who he hasn't seen since then, he filed for asylum on that basis of political persecution, and he was denied asylum by the immigration judge after a full and individual hearing. He appealed to the Board of Immigration Appeals. He was granted a remand in order for the judge to consider the substance of documentation that could rehabilitate his credibility, and they said that the judge had vague demeanor findings and speculative exaggeration findings. Then after remand, there was another hearing in front of the same immigration judge who again denied asylum and withholding him, ordered him deported again. And then that was appealed to the BIA, and the BIA affirmed the immigration judge's decision, and that was appealed to this Honorable Court. We are requesting that this Honorable Court reverse the BIA's order denying my client's appeal of the immigration judge's decision denying his applications for asylum and for withholding a removal, or at least remand the case. This morning I would like to focus on the issue of whether minor inconsistencies should support the finding of adverse credibility of the petitioner, which led to the denial of his asylum and withholding, and whether the immigration judge committed an error in conducting a full hearing and hearing testimony from petitioner all over again. So the BIA incorrectly upheld the immigration judge's decision, and petitioner testified inconsistently about what happened to his tea shop on March 16, 2009. He testified at first that the store was ransacked, but another time stated it was burned down, yet his affidavit states that the store was targeted and damaged by the Whammy League, which is the ruling party, and he told the asylum officer that the shop was torn down. Minor inconsistencies in the record, which reveal nothing about an asylum applicant's are not an adequate basis for an adverse credibility finding, whether the store was damaged or ransacked or burned down or all of the above. What about the testimony that he ran into the garden, and then he said, no, he ran into the house for two to three minutes, and then he ran into the garden, and then in his declaration he said he ran into his forest. How do you explain all of that? In his testimony, he explained that to the immigration judge that he was fleeing from his attackers, and he ran into a house. The house was... That's what I just said. He says all that, but they're all different accounts. It may seem that way, but he testified that he, whether the case he was fleeing from his forested or a gardened area with many plants. So he said he ran into a forest, another place. A forest or a garden at other points, and there could be some mistranslations, perhaps, but that's almost the same thing. Whether running into a garden or a forest, they're both planted areas with many plants. Isn't that what the immigration law judge does, those, weigh those things and decide whether or not they're close enough that maybe they're consistent or they're not close enough and they're inconsistent? Yeah, I feel that maybe, I feel that he may have not made the correct decision on that. Maybe not, but what's wrong with his analysis, I think is what Judge, I don't want to put words in Judge Watts' mouth, but from my perspective, what's the problem with his analysis? If you say house, garden, forest, three different things, using different words regardless of the language I'm assuming, then the judge has got to decide whether or not they're innocent or whether or not they are, create this lack of reliability as to those three things. Isn't that what the ILJ does? Yes, the IJ does that. Excuse me, so what's wrong with what he did? Oh, well, those are synonyms, basically, like, you know, if we say like a house at one time but a home at another point, we're still saying the same thing. We don't say house and garden, right? Or forest. Or forest. Yeah, garden or forest, they can be synonyms in a way, and he's testified that he ran into the house through the back and into a forest or garden. Did you represent him before the IJ? For one of the hearings, I did. And so did you make an effort to, is he, does he speak a foreign language? Yes, he does. Does he speak English? He speaks limited English, Your Honor. Was there a translator there? There was, Your Honor. Was there a problem with the translator? Not that we are aware of, but translators can, you know, say, like, I don't think it was a... Did you put anything on the record? See, all we have when you get up here is a record. So did you try to get him to clarify that actually it's the translator that's making this difference between forest and home? Did you make any attempts to clarify any of these inconsistencies? He testified during the hearing that he, when the immigration judge asked him about it, that he ran into a home, and then from there he ran from into, from the home into the, from the back and entered a garden or forest where he hid from his attackers. Did you question your client before the immigration judge? I have. Yes, I did. And so did you talk to him about these issues? I cannot recall, but I believe that, maybe I suppose that his testimony was, regarding that was plausible at the time. See, it's his burden. And so it's not whether it's plausible. You know, you're dealing with a fact finder who's making factual findings. Right. But there was no way to tell that, you know, whether the immigration judge would not believe that. Well, there was a way to tell that he had taught, he had made inconsistent statements. They were, you know, we are saying that those were minor inconsistencies. I know what you're saying, but maybe if you thought that they were minor inconsistencies, maybe it was worth clarifying with him what it is he actually intended. Perhaps in hindsight. Okay. Thank you. So the immigration judge erred in conducting a full hearing on remand, requiring petitioner to test file over again, expecting him to reproduce from his memory the very same exact language as he had during previous hearings and his affidavit. You know, so that's always difficult to do. And especially since the second hearing was two and a half years after his first hearing. So memory is always, might fail a little with time and we can't recall exactly the same language that we have used before. And people, and these were, he was recalling traumatic, painful events that, you know, most people try to block out from their memory because it's so painful to recall. And so the judge, the immigration judge was rewriting his second order and decision to basically, you know, maybe he made up his mind and he was trying to counter what the remand the case back to him again. Is that a problem? That could be. That would violate the due process. I mean, if a higher court tells me to do something, it's probably likely I'm going to at least try to do it on the second go around, right? Yes. That's right, Judge. Yes. So he maybe should have considered the BIA's decision more thoroughly. And so he heard the testimony again, which was not right to have a retrial. Basically, the instructions were to consider the substance of corroborative documentation that could have rehabilitated his credibility. And the petitioner has a low level of education, just a primary school education, so he cannot articulate many points of his testimony very well as others could, such as the political philosophies of his party, the Bangladesh Nationalist Party, and that is why he would say things like, it is a good party. He can still convince others to join as long as they trust his word. The others he has convinced to join may not have as much education either, especially if he comes from an area with low literacy levels, such as where he does, his part of Bangladesh. I did a quick Google search and I saw it has a 51.3% literacy rate in 2013, which is low compared to the United States and many other countries. And there were alleged discrepancies in the medical report from the doctor who treated him, as alleged by the immigration judge and DHS counsel. And the immigration judge said there were insufficient details to describe the petitioner's injuries in the medical report. However, the doctor clearly described his injuries in detail when he said that the most severe cut was more than half an inch deep and two and a half inches in length above the left elbow. That's pretty detailed in our view. The immigration judge said that the letter from his father did not mention the attack on their arson shop and that contributed to the judge believing that the attack never occurred. However, the father's letter only describes the contemporary situation in Bangladesh where he describes the threats they are still continuing to receive from the Awami League. The fact that other BNP members like Petitioner have been killed and warns him not to come home where his life will be threatened. It is not a letter describing what happened to Petitioner previously, but it's just a letter telling him not to come back right now because BNP members are still being killed and persecuted by the ruling Awami League party, who is still in power. And the immigration judge said the statements and testimony from the petitioner's witnesses were entitled to minimal weight because the statements and testimony were from friends and family and contained general statements but did not provide detail consistent with Tofu's claims, respondent's claims. Just because it's from friends and family doesn't mean that they should be accorded limited weight. They may have an interest, but however, for example, as an analogy, if someone was gunned down in his own home and the only evidence and key witnesses were from his own family members, should the family member's testimony be discounted? The answer is of course not. It does not minimize what happened. You know, whether they have an interest or not, they're still testifying as to what happened, and the easiest people to get testimony from at times are the only ones willing to go out of their way and spend their own time to testify, and who are those people? They'll be friends and family, more likely than others. Respondent's ability to travel to and from India and to travel out of Dubai with official documentation belied Tofu's claim that he is at risk of serious harm if he returns to Bangladesh. That's what the IJ said. I know that from other clients from Bangladesh that it's not too difficult to get passports in Bangladesh. Sometimes a simple bribe or connections can get the job done. Additionally, being able to leave a country is actually maybe indicative of the country's government not minding the person leaving at all, especially if that person is opposing the government and they deem him to be a threat. They'd be glad for him to leave the country. That is all I have. Any questions? Although my time is about to run out. I don't think there are any questions from the court. Thank you, Counsel. Thank you. Mr. Braga? Thank you. May it please the Court, Victoria Braga appearing on behalf of the Attorney General. The Court should deny the petition for review because the agency's denial of asylum and withholding on adverse credibility grounds is supported by substantial evidence. The agency offered specific, cogent reasons for finding that Mr. Tofu testified incredibly. I'd first like to address petitioner's contention today that it was improper for the immigration judge to consider further testimony on remand. And the Board… Let me ask you this question. From my review of the records, some of the grounds, the instances that the IJ relied on in finding an adverse credibility determination seem to me to be wrong. For example, he put weight on the fact that the doctor's letter was dated May 20, 2009. It seems to me pretty clear that was probably a typo. But if… Just bear with me for a second. If we should conclude that some of these reasons for the credibility determination were not well-founded, but that there were some issues that could support an adverse credibility determination, what should we do? The court and the agency also address credibility concerns in the totality of the circumstances. So the court should consider in the totality of the circumstances whether the agency's finding that petitioner was not credible is supported by substantial evidence. The court should only remand to the agency if the court finds that the record compels the conclusion that the petitioner did not testify incredibly. So your position is that there are, say, five reasons that the judge gave for finding the testimony not reliable. And we review it and we think three of those reasons are in error. The two of them are valid. Then we have to look at the two valid ones and see if that amounts to substantial evidence or do we weigh the whole, all of them to say, well, is there enough here to say it needs to go back for correction of these three items that we think are in error? Well, the court would have to look at each of the rationales offered by the agency and then determine if those rationales, determine if the rationales cited support the finding that the petitioner testified incredibly. If the court finds that several of those rationales are appropriate to find that the petitioner testified incredibly, the court should uphold the credibility finding as supported by substantial evidence. Well, I mean, that's a good general exposition. But I would be really appreciative if you would answer Judge Osteen's direct question. Suppose we have five rationales offered. Three we think are meritless. Two, there is evidence for saying that the IJ was correct on that. What do we do? The court would, if the court found that the rationales cited by the IJ that the court finds do support an adverse credibility finding, in this case considering the totality of the review, finding that the agency's decision had adequately found the petitioner not credible. I think that's a restatement of your first answer. And what I'd like you to tell me is that what we are to do on the state of the hypothetical that Judge Osteen gave you. Well, I think it would The majority of the reasons, slim majority, but the majority of the reasons offered by the IJ we find were inadequate. But there are some reasons that he offered that were adequate for finding no credibility. I think that the court could issue a decision saying Well, we can do anything. So the could doesn't help me much. The court should issue a decision saying that even discounting these reasons, relying only upon the reasons cited by the immigration judge that the court finds support an adverse credibility finding, the court finds that there is substantial evidence to uphold the immigration judge's adverse credibility finding. And is there circuit law supporting that view? I don't believe that this court has law. I would be happy to provide supplemental briefing on that issue regarding whether, you know, there are decisions where the court finds that some instances cited by the IJ and the BIA for an adverse credibility determination are supportive of that determination and some are not. I think that in this case it's not necessary to address that issue because each of the rationales offered by the agency for the adverse credibility finding is supported by substantial evidence. Considering each of them in turn and the court mentioned some of them as petitioners. How about talking about the ones that I didn't question your colleague about? We've already talked about the date of the doctor's order. It seems to me that that's pretty clearly a typo so that you shouldn't be relying on the fact that it was dated. Oh, I'm sorry. So it's true that the date of the doctor's order. I think there's more of an inconsistency there maybe than the agency's decisions are clear about, but if you look at the doctor's letter, which is on page 159 of the administrative record, not only is it dated May 20th, but it says, I treated Mr. Tofu when he presented with severe injuries on May 20th, 2009. Mr. Tofu never testifies that he was injured in 2009. His testimony about a March 2009 attack actually indicates in multiple incidences that he escaped his attackers on that occasion. Mr. Tofu claims that he was injured in 1996. Where is this in the JA? The doctor's letter is on page 159 of the administrative record, and it's the first sentence of the second paragraph where the doctor claims to have treated him when he presented with severe injuries on May 20th of 2009. 159? 159 of the administrative record, yes. I have it at 161 or 169. It may be 163 in your record, the way this is printed. Yeah, but you see the date of the doctor's certificate is May 20th, 2009. Right. It looks to me, that's what it says at the top of it. Yes, that's true. It does, but the first sentence of the second. I understand that, but doesn't that suggest to you that maybe, as you often do, you make a mistake because he knows it's now May 20th, 2009 when he's writing this letter. Do you understand what I'm saying? No, I do understand what you're saying now. And you say, no, he intended that it would be that he came in on May 20th, 2009. You just stand by it. Okay. Well, I think that the theory with the letter, as submitted by Petitioner, is that it was made contemporaneously with the treatment that the doctor rendered. I think that's why it's offered, and Petitioner never offers any reason to believe that it was prepared otherwise. It is contemporaneous with the treatment. Well, okay. Well, so what I'm saying is there's no testimony in the record to indicate that he was injured in 2009. His testimony is that he was injured and cut on his left arm in November of 1996, and that he went to the village doctor at that time. This doctor's letter is consistent with that account, a cut on the upper arm that was treated by a village doctor. However, it provides that the treatment was rendered in May of 2009, which is 13 years after the injury as testified by Mr. Tofu. So the inconsistency there is — I understand the inconsistency. What I had suggested to you was that it is the same injury that the Petitioner here claims and that, therefore, the doctor is describing it from his notes, but he inadvertently puts the date on which he writes the letter as the date on which the injury occurred. But I understand your position that that is not so, that, in fact, he describes exactly this injury that, according to the Petitioner, took place a long time ago, and he puts another date on it. So I understand your position. Yes. And I think it's relevant in that respect that when this evidence was offered, if that was indeed the case, there should have been an explanation offered for why, to be sure, the letter was — and Mr. Tofu has never attempted to offer an explanation, even before this Court. He just claims it's a minor inconsistency, even when he's put on notice by both the Immigration Judge and the Board of Immigration Appeals that they're considering his testimony about the injury he allegedly suffered inconsistent with the doctor's note in the record. Ms. Broderick, turning to the 1996 incident, what do you think is generally, I guess, more direct evidence? A statement or live testimony under oath? A written statement, I should say. A written statement. Versus live testimony under oath. Could Mr. Hogue and Yusuf testify under oath that this happened, but it seems like they were given little, if any, credit because it wasn't in their statement earlier. Is that right? I think his statement was not given credit as the other statements because it was by an interested witness and also because it was sort of vague with regard to detail. And what was his interest? He is a friend. He's a friend of Mr. Tofu. So this Court has held, specifically in the DiGiagi case, that letters from family and friends should not be given weight because they are from interested witnesses. The case has been cited at least twice, I think, in published decisions by that Court most recently in around 2013. So that is a valid basis for the... But it was not as much weight. Did we say no weight? I have the case... That's all right. I can look it up. I thought since you cited it, you knew the... Yeah, but it seemed like he gave no weight to it. Yeah, I don't know if he gave no weight to them. He did also go on to say that the statements were also vague. They didn't provide a lot of details and very general in nature. So that's another reason on top of the fact that these are interested witnesses to not afford their statements much weight. With regard to Mr. Youssef's testimony, I think that it's unclear from his testimony whether he was an actual witness to the attack that he discusses. And I think that it's Mr. Youssef that's talking about the 2009 attack. Or I'm sorry, Mr. Youssef is talking about the 2009... I think it's Mr. Hawk that's talking about the 1996 attack. Or he testified to the 1996 attack, but he doesn't mention it in his affidavit. Mr. Youssef, I don't think, testifies to any attack. And he just says that to his knowledge, Mr. Tofu was a BNP member. So it's not clear then how he knows that he's a BNP member, if Mr. Tofu ever represented that to him himself. I think it's in their testimony that they talk about the attacks. And as cited by the agency, it's not clear whether Mr. Hawk actually saw the 1996 attack. First, in his testimony, I have it on page 537 of my record. He says that he did not see the attack. And then later, on page 544 through 545 of my record, he claims that he did see the attack. Similarly, Mr. Youssef appears to admit in his testimony, although he discusses, I believe, the 2009 attack, that he did not see the attack. He indicates that Mr. Tofu was running from the scene by the time that he arrived. So to the extent that their testimony and statements reference the attack and reference Mr. Tofu's BNP membership, in addition to being from interested witnesses and being general in nature, they don't come from witnesses who have very clearly actually witnessed what they are discussing. So given all those factors, the agency was not wrong to afford those documents limited weight. I think it's also important when talking about corroborating evidence to note the fact that the agency had already found, based on his own testimony and evidence, that Mr. Tofu was not credible. The agency looked to corroborating documents only to see if that could independently establish Mr. Tofu's claim or to cure some of the defects in his own testimony. And the corroborating documents, being vague and general in nature as they were, and sometimes conflicting with Mr. Tofu's own testimony, certainly did not clear the defects, if anything, they added to them. So the agency was not wrong in this case to find that, under this court's framework and the framework used by the agency, the corroborating documents here did not cure the adverse credibility finding made specifically based on Mr. Tofu's testimony and supported by substantial evidence. To briefly address Petitioner's contention that the agency was wrong to consider further testimony on remand, the Board did remand the case and the Board stated, in addition to stating that there were problems with the IJ's first credibility finding and that he should consider corroborating documents, that the immigration judge should determine a new Petitioner's eligibility for relief. When the Board remands a case, the remand is for the stated purpose and if not explicitly limited by the Board, as this remand was not. The immigration judge is then free on remand to determine any other issues as necessary. Also, in remanded proceedings, there were three hearings and at each of them, the immigration judge talked with Petitioner's counsel and it was very clear that Petitioner's counsel intended to offer further testimony. The last thing the immigration judge said in that regard was at the final hearing where he said to Petitioner's counsel, the avenues are widely open for Petitioner to come forward with his claim and to express it as he wishes before the immigration court. So everyone was on notice that further testimony was expected and anticipated in this case. Unfortunately, the testimony offered served only to bolster some of the inconsistencies already in the record and the immigration judge and the Board of Immigration Appeals relying on all of the testimony in the record was correct to find that the Petitioner did not testify credibly and that an adverse credibility finding, which was not his claim not being otherwise corroborated, was fatal to his claims for relief. If there are no further questions, we ask the court to deny... Let me ask you a question. If we disagree with the findings, I think it seems to be it's a little support for the finding that he didn't do enough to show his affiliation with the BNP and that he didn't do enough as to showing that the police refused to help. I think the record is replete with his affiliation with the BNP and it's also, he said he went to the police and they refused to do nothing. My question to you is, I know you're probably going to disagree with that, but go ahead but I have another question after that. Tell me how you disagree with that. Regarding his affiliation with the BNP... You talked about his loyalty there, what they do. It seemed like they were asking for it because he couldn't produce a card. I mean, there are a lot of people in America that could say, can you produce a card that you're a Democrat or an independent Republican? They're afraid to say not, but does that mean they're not affiliated with their political party? No, I think the inconsistency here that made the immigration judge doubt his affiliation was a little bit more than just not being able to produce a card. Mr. Tofu was allegedly a member before he left Bangladesh of the BNP for about 20 years becoming a member in 1987, yet as stated in Petitioner's Brief when asked several times during his testimony what the party did and what it stood for and additionally what its slogans were at the many meetings he allegedly attended, he simply reiterated that the party was good. I think that the immigration judge was not wrong to require more detail than that from someone who had been a member of the party in Bangladesh for 20 years. Again, you think a lot of people who have been Democrats, Republicans or independents in the United States could tell you what the party really stands for as platforms and mission and ideology? Do you think so? Or they just say, no, that's who I vote for because I like him. That's exactly what he said, because I like him. I think 90% of people in America say the same thing. I vote for him because I like him. That may be true, Your Honor. But I do think that here this is not someone who's saying, you know, I voted for the BNP because I like them. He's saying that he was actually somewhat similar to an activist for the BNP, involved with the party for 20 years recruiting people. As a recruiter, you should be able to at least tell people more than, I like them, the party's good. The immigration judge wasn't wrong in this case, given his claimed involvement. What about the police? He said he went to the police and they said... As far as police involvement, his testimony was a bit lacking in detail. He said simply that he went to the police. He didn't provide any more detail than that, other than that they wouldn't take his case. Well, he had no police report because they refused to take his case. I mean, that's what happens when they don't take your case. You get no report. So what is he supposed to show other than himself? Say, I went there and they told me no. What paper did you get? That's true. I don't think he necessarily had to produce a paper in this case because the problem with his testimony about the police is that it's also implausible. He testified that the police would not help him because they supported the Awami League. Because what? Because the police were supportive of the Awami League, who are his alleged persecutors. It's implausible? The testimony is implausible in that regard because after the alleged attacks on him he was able, and he testifies on page 407. I'm sorry, I see my time is up. Can I briefly conclude? He testifies that he was able to obtain a passport and visa and that this requires police verification in Bangladesh. So it's implausible that police who would verify his leaving and coming back to the country with a passport and a visa would also be the same police that were unwilling to support him because they are supportive of... I disagree. I mean, I don't think one of those things follows from the other at all. They're ready to give him a visa but they're not ready to go out and start an investigation of people that might be persecuting him. I mean, it seems to me that's apples and oranges. Well, I think there is some link, definitely, and I think that this is an issue where reasonable minds may disagree. The question is whether the record compels the opposite. But the problem is the factual basis is so weak to support a conclusion. And the question, finally, I want to ask you and your colleagues can ask what they will, but my final question is that if we party affiliation and the evidence that police refuse or are unwilling to help him, even if we agree with you on these inconsistencies as to the attacks in 96 and 09, is that enough to prevent this from being sent back for a remand to totally look at those and the like? Is that enough? You got one out of three enough for you? Again, I believe that the court needs to look at the totality of the circumstances and if one of the reasons cited, even one of the reasons cited by the agency is strong enough that this court finds that it can... What's your best case for that proposition? That one out of three is enough? I don't... The meatloaf says you need two. I don't... You're not old enough to get that joke. Again, I don't know if the court has specific case law or if other circuits have addressed this issue, but I think that the main point on that issue is that the court is doing a totality of the circumstances analysis and if the court can find that the reasons cited by... If the court can find that several reasons cited by the agency support an even discounting the other ones, there is substantial evidence in the record to support the agency's making of an adverse credibility finding in this case. The court should deny the petition for review and affirm the agency's adverse credibility finding. All right. I think that's it. Thank you, Counsel. Thank you. Appreciate it. Mr. Kapoor, do you have some additional time? Hi, Mr. Judge. It appeared that the immigration judge was giving very limited weight to the corroborating documents that could rehabilitate the petitioner's credibility. Give us some examples. You only got five minutes, so tell us... You know the heart of the case now. Where is it that refutes this? I mean, this is your client's last chance to do so. Point to it and tell us what your robust argument is. Well, I'm going to refute the judge's contentions. The BIA found the first time around that corroborating documents could rehabilitate his credibility if they were actually considered in their substance. During the hearing, the immigration judge wanted the petitioner to testify, and he seemed like he would only be satisfied if he heard the testimony of the petitioner. So he kind of had to go up there and take the stand and just try to satisfy the judge that his testimony is credible. And then, as far as the police, the judge said, well, he didn't I don't believe it because he didn't say who... When he went to describe who he reported his attack to. I mean, as a matter of the police didn't take the case, his case, and also just because you don't say, you know, give like the name of the police officer in describing that you went to the police station doesn't mean that you didn't go there. You know, that's not a very vague reason to deny credibility on that aspect. And... What about the party affiliation? What about that? He should have been able to at least, if he's a recruiter, to say something with evidence his affiliation or his support. What is your response to that? He testified under oath regarding his activities and that he organized meetings, rallies, he can recruit others to join as well. And, you know, I don't think the immigration judge considered his limited education and if he's saying it's a good party and telling others also with limited education it's a good party, then that's pretty much enough if they trust him. Limited education would explain his less than desirable articulation, ability to articulate what his affiliation was, you say? Yes, your judge, and that is our position. How do you recruit people to an organization when you don't know what it stands for? He probably knew like some you know, he probably just knew that it was a good party in his heart and his mind. So, you know, if he's telling others and they believe the sincerity of his word, you know... Were you with him at the... Did you represent him there? Did you prepare him for his testimony? I did help prepare him for testimony. Were you present? During his preparation? No, during the testimony. Yes, for his final hearing I was. I was not his attorney in his previous individual hearings of which he had... So you were there when he was able to supplement his record with live testimony. Were you present? Yes, for his final hearing. Yes, he did testify and I was his counsel at that time. And so... And regarding whether, you know, he's going, traveling back and forth from India like... India and Bangladesh have a porous border. You can easily go back and forth, so he could have easily done that even without obtaining a passport or anything like that. So, you know, regarding that, that's not an indication that he could... But is there a record that he did have one? That he was given permission to... Is there a record that he did get a visa or travel by proper documentation? I'm uncertain of that, Your Honor. If he had documentation or not. Anything further, Mr. Kapoor? Any final statement or anything? That is all for now. That's all? Okay. All right. Thank you so much. We'll ask the clerk to recess court.
judges: Roger L. Gregory, Diana Gribbon Motz, William L. Osteen Jr.